Thank you. Good morning, your honors. Richard Pray for the appellants. This is a case that suffered from putting a procedural cart before a procedural horse. And it's a due process case. It centers around Rule E-4-F, the supplemental rules, which provides for a prompt, and I emphasize the word prompt, due process hearing. The comments to that rule indicate that it is essentially a way of codifying requirements that are imposed constitutionally based on a series of United States Supreme Court cases. In this case, that imperative seems to have been entirely ignored. My interpretation of that is that before anything else happens, the court has to determine whether the arrest itself should have taken place. And it's plaintiff's burden to show that, to justify, in effect, the seizing of somebody's property. In this case, the magistrate judge, at a hearing which was instituted by a telephone call, felt at the end that he wanted further evidence, further briefing, and set a briefing schedule to which no one objected. And then during that process, other procedures were initiated by the plaintiff, which logically should come after there's been a decision on the E-4-F issue of the validity of the arrest. The defendant opposed the motion, originally an ex parte application, for the sale of the vessel, basically on the grounds that the due process hearing should be completed before it was decided to sell this vessel at considerable cost, probably loss of value. That argument was ignored by the court, ignored by plaintiff's counsel, and the same applies to the issue of the bond. Well, no, there was – if I understand the story right, the magistrate judge was going to have a hearing on whether the arrest of the vessel was proper, and set out a time for you to come up with a witness list and exhibits and so forth. That's much later. That's much, much later. What he said at the initial hearing was that he wanted more evidence, more briefing, and that it could be set then after that time. This wasn't something that either of the parties requested. This was the magistrate judge's idea. There was no objection to the briefing schedule on the plaintiff's part. Later, after this bond issue had been decided adversely to the defendant, the court denied the request for the hearing to finish up this E4F process, and the conditions weren't just supplying a witness list and so forth. It was also that the bond had to be posted before that hearing could take place. So you're telling the defendant, you know, we're going to sell your boat. We're going to make you post a bond. We're not going to make the expatriate plaintiff, who has apparently, as far as the record shows, no assets in the United States. The boat was converted to cash. What was the problem with having you post a bond before you could go further? What's the problem with that? The problem was that first it's… You didn't have any money. He had the cash that was from the boat. It was on deposit with the court, but you had nothing up, and aren't you required to put up security to go forward with your complaint? Well, the rules provide that the court may order either party or both to post additional security. Well, you had the money for the full amount that was sold for the boat. You had nothing up at that point. No, I don't understand that. You didn't have money deposited with the court. You're saying that he was expatriate. He had a boat. The boat was sold. The money for the proceeds for the sale of the boat was deposited with the court. So he had security up. You could have gotten to that any time you wanted to if you prevailed. But the boat has… At that point, the defendant has already lost $17,000 for the cost of the sale. What does that have to do with the termination sanctions? Well, it has a number of things to do. One is it's just fundamentally unfair to require the plaintiff or the defendant to post more security. He's essentially posted $100,000 via the arrest of this vessel. The plaintiff has posted nothing, no security. Suppose it turns out that, you know, the plaintiff is going to lose. You know, normally in this is kind of a prejudgment attachment. And normally plaintiffs seeking that kind of remedy are required to post upon routinely. Admiralty law, at least in this respect, is a little bit vague. It just allows the court to require either party to post. But the plaintiff is being forced to sell his boat. Now he has to put more money up as to purchase a bond, which he couldn't afford in any event, simply to defend the case. And the magistrate judge said, well, why would he need more security since he's got this $80,000 or so in the court's registry? But he's already lost $20,000. He's going to lose more and incur more expense. It makes no sense. And it certainly should not have been a requirement before this prompt due process hearing on the validity of the rest. The rest is decided. Secondly, the I'd like to reserve a couple of minutes, but you've got two minutes left. I'll reserve. Thank you. Good morning, Your Honor. Andrea Catalano, Red Crow, appearing on behalf of Henry Michaels. With regard to the adversary hearing, which was conducted in March on the 27th, pursuant to Supplemental Admiralty Rule EF4F, the defendant has admitted in the underlying district court action and in his opening brief at page 26, that the maritime lien asserted by Henry Michaels was valid. The entire purpose of an E4F hearing is to simply establish that the plaintiff has a valid lien to allow for the arrest of a vessel, which is the security guaranteed under the preferred ship's mortgage. The fact that the defendants have conceded that the arrest was valid makes all of the months and motion practice and hearing on the arrest unnecessary and frivolous. It wasted months of time in the court, and there was no basis for having to have that hearing. In what way did he concede that the lien was valid? He conceded the lien was valid by admitting to the preferred ship's mortgage that had been executed and duly recorded with the Coast Guard. I understood their argument was that the lien had been paid in full. There was no satisfaction of lien recorded with the United States Coast Guard, which would be the only means possible for him to show that the lien had been expunged. Be that as it may, were they saying, yeah, we paid it off? That was their argument. Their contention was that they purchased the $200,000 vessel for only $100,000 and had no further obligation to my client. You say they never produced a satisfaction. That's correct. Did the magistrate judge rule on 327.06 that the lien was in fact valid? On 327.06, the magistrate declined to release the vessel from arrest. When Mr. Soderbergh left open the question of whether the lien was valid. He did not make a definitive ruling. That is correct. Mr. Soderbergh had indicated during his testimony at court that day that he may have had additional documents that he wished to retrieve and present to the court. And in that manner, the court agreed to allow him some time to do supplemental pleading, and no additional documents to show satisfaction of the lien were produced. Was there any documentation with regard to the purchase in the record? In other words, what the actual agreement was? The purchase price was oral, and the only documentation concerned the $100,000 that had not been paid that was going to be paid through an installment plan of $725 a month and lump sum payments contingent upon, triggered with the sale of certain properties held by Mr. Soderbergh. You say that was in writing, that $100,000 installment payment plan? Yes, sir. It was a promissory note then secured by a preferred ship's mortgage recorded with the Coast Guard. And that's where the lien came from? Yes, sir. And what was shown that was paid on the vessel? Mr. Soderbergh made approximately, I believe, four or five $725 payments. On that installment contract? Yes, sir. And then he stopped making payments. Was there any money paid before that's in the record? There had been an earnest money down payment of $10,000 cash, followed by a wire transfer of $90,000, which represented the first half of the total purchase price. That was not documented. So the record shows $100,000 paid up front. Correct. And then there's this contract which he makes payments on, three or four or whatever, which caused the lien to be placed on the boat. Correct. Okay. The defendant's objections to the interlocutory sale of the vessel pursuant to Rule E9 is inappropriate and was also a frivolous opposition in that the defendant failed to address any of the standards set forth within the rule, which would provide the basis for avoiding sale. I'm not clear on how the magistrate judge could have ordered the vessel sold without first ruling that the lien was valid. The court had not made a finding that the lien was not – that the lien was invalid and it had received testimony. Well, the question is, doesn't the magistrate have to find that the lien is valid before you can order the collateral sold? I don't believe so in the case of a maritime lien because the vessel itself is simply a form of security. As a vessel is subject to waste, particularly in a seawater environment, it could be wasting. So if the lien is not valid, the lien is not valid? Then he would have the value of the money returned to him. He would have to order the collateral sold even if the lien is not valid? That can't be – you don't mean that, do you? There would – I don't believe that would be the case, but there was no harm here to this defendant because the court did not find the lien invalid and the defendant has admitted the lien was valid. Well, no, he admitted – he says the lien was paid off, if I understand it right. But for purposes of an arrest, it's not a question of is the lien valid? Am I going to prevail on my underlying claim to foreclose on the lien? That's not the question in adversary hearing. The only question is, have I perfected a maritime lien? Have I shown that I had an interest in the vessel and it was duly recorded? And that was the only requirement that needed to be shown to uphold arrest. That has been shown and it has been conceded. Once that premise is established, interlocutory sale can be done and is very appropriate in the maritime context because the boat is losing value every day that it sits in arrest. Over $18,000 was spent keeping that vessel in arrest until it was sold in July. It's a little perplexing the magistrate didn't rule that the lien was valid. The magistrate judge apparently punted and called for additional briefing. And then while the additional briefing was coming, he ordered the boat sold before getting the additional briefing. The additional briefing was received before the judge made the order on the sale and before the order confirmed the sale. He called for additional briefing. And the briefing was due in May, to my understanding, Your Honor. The vessel was not sold until July and it would have been subject to an order confirming sale before the sale would be completed. So the sale came after the briefing came in? Correct. And the defendant did not properly request further hearing on his objection to the arrest. So while the court was perhaps somewhat dilatory in affirming the arrest by formal order, it had received briefing and the defendant had failed to make an appropriate request for further hearing if he felt it was necessary to conduct more proceedings in open court. The judge gave him another opportunity in September when he again complained that he felt that the arrest was not valid and he was told to provide that list of witnesses and exhibits, but he did not comply with that order or seek further hearing. He abandoned the issue. Help me out here. What is your understanding of his complaint that the arrest was not appropriate and that the lien was not valid? What do you understand he's arguing for that invalidity? He's arguing that the purchase price agreed was only $100,000 for this year. And you just previously told me that he did pay $100,000, but that there was a promissory note in writing for another $100,000 on which he made payments after he made the first $100,000 payments. Yes, sir. Those were all before the judge? Yes, sir. The lien was properly recorded? Yes, sir. And there was no satisfaction lien on the record? Yes, sir. And so then they proceeded under the maritime proceedings because of the nature of votes and they get away and all that stuff that allows for the sale? Yes, sir. Okay. Sanctions are appropriate here as against both the defendant and his attorney in light of the numerous motions brought by counsel that lacked any merit under admiralty. The arrest proceedings lacked merit if you looked at the law for what an adversary hearing on arrest is intended to do. The opposition to interlocutory sale and to the order confirming sale were not appropriate as the standards were not addressed. The defendant's cross motion for security under Rule E2B was particularly inappropriate as it was not predicated upon any recognized theory in maritime law. There's no remedy for this defendant to seek a security against the plaintiff. In addition to those motions being frivolous, the ex parte application and repeated motions for stay of the order to give security were frequently defective, repetitive, and they ignored the initial order on ex parte application that it was denied. But he filed it again, and it was rejected. The motion for review was rejected for failure to include a notice of motion in motion. That's a violation of Local Rule 6.1. That violation occurred four times in this case. The court found seven violations of the local rule, which caused significant expense and prejudice to plaintiff's counsel and inconvenience to the court. Thank you very much, Ms. Callahan. Thank you. Thank you. Just to be clear on the issue of conceding that the lien is valid and therefore all of defendants' requests for an E4 hearing being frivolous and intended to prolong the proceedings. It wasn't the lien itself. There was, but plaintiff seems to be arguing that if I sold you a boat and you gave me a promissory note for $100,000 and I in the meantime recorded the mortgage and so forth and you paid me the $100,000, I could go out and legitimately arrest that boat that I had sold you and that you had paid for. Did you pay $100,000 up front and then start making payments under the note thereafter? No. The only documentation of this transaction, and it wasn't well documented by either party, is the promissory note for $100,000. Just before Mr. Michaels left for Costa Rica, apparently for good, he asked for $10,000, which was given him in cash, I believe, and it was noted on the promissory note itself. Then subsequently there was a wire transfer for almost all of the balance. There was apparently some issue about currency conversion. Michaels claimed that the full $100,000 hadn't been paid. Soderbergh made some more payments. Tell me if I have any of these facts wrong. Okay. The boat's arrested. They come in. You request a hearing. The magistrate judge has a hearing. They produce a mortgage that looks valid on its face. You have no written satisfaction of the mortgage. The judge allows additional time for briefing. The briefing comes in. The judge looks at the briefing and orders the boat sold and allows a further hearing to occur so that you can make whatever further arguments you want. He calls for you to file a witness list and exhibits. You neglected to do that after two extensions, and the judge says, you know, enough's enough. You lose basically by default. Do I have any of that wrong? In a sense. When the judge issued the order about the witness lists, this is well. This is way down the road. I mean, it doesn't count. I mean, the problem with it is that the request for witness lists and that kind of thing is perfectly reasonable. It was never mentioned back when the judge, not not the defendant or his counsel, said he wanted more briefing and more evidence. It wasn't mentioned. But months later, after all these other things have transpired, and finally I get in a request that was satisfactory for this hearing. He imposed not only the witness list and those kinds of requirements, but also imposed the condition that the bond had to be paid. And that was what we couldn't do. And you never said you couldn't do it until time to do it long came and gone. Well, that's true. But at the same time, I mean, I think everybody knew it. That's why you look at the transcript of the sanctions hearing. It's not only conceded by the judge and counsel that Soderbergh didn't have enough money to do that, but but it's advanced as the reason for imposing terminating sanctions. OK. Well, thank you very much. Counsel. Thank you as well. The case argued is significant. Thank you. Thank you very much. 0756133 Beverly versus Wilkowitz. Each side has 15 minutes, and I understand that counsel have already met and conferred about how they're going to divvy up their time. I understand that correctly.
judges: Brunetti, Silverman, Conlon